IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

JOHNNY P. LEE,                        )
                                      )
            Plaintiff,                )
                                      )
                                      )        CIV-13-772-F
v.                                    )
                                      )
CAROLYN W. COLVIN,                    )
  Acting Commissioner of Social       )
  Security Administration,            )
                                      )
            Defendant.                )

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of

Defendant Commissioner denying his application for supplemental security income benefits

under Title XVI of the Social Security Act, 42 U.S.C. §§ 416(I), 1382.  Defendant has

answered the Complaint and filed the administrative record (hereinafter TR___), and the

parties have briefed the issues.   The matter has been referred to the undersigned Magistrate

Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B).   For the following

reasons, it is recommended that the Commissioner's decision be affirmed.

## I. Background

Plaintiff applied for benefits on January 26, 2010 (protective filing date), at the age

of 31 and alleged that he became disabled on January 1, 2005.  (TR 75).  He alleged

disability due to bipolar disorder, depression, schizophrenia, epilepsy, Bright's kidney

disease, and nerve damage. (TR 97).  Plaintiff completed the eighth grade and previously

1

worked as a farm laborer. (TR 98-99, 115, 121).

The medical record reflects that Plaintiff underwent a consultative physical examination on May 14, 2005, conducted by Dr. Abu-Esheh in connection with a previous disability application. (TR 150-153). Dr. Abu-Esheh reported that Plaintiff exhibited normal thought processes and his epilepsy was well-controlled on medication. However, he was not taking his prescribed epilepsy medication. (TR 152). There were no musculoskeletal, neurological, gait, or other deficits noted on physical examination. (TR 152). Plaintiff was incarcerated from February 5, 2008 to October 27, 2008. (TR 273). During his incarceration, Plaintiff was treated for a seizure disorder, bipolar disorder, asthma, and Bright's disease (nephritis). (TR 273).

In a consultative psychological evaluation of Plaintiff conducted by Dr. Morris, Ed.D., on January 13, 2009, Plaintiff reported that he "believes that he is able to work if he is able to obtain employment." (TR 334). He reported he was receiving outpatient mental treatment for the previous two months for bipolar disorder and depression and that he was taking medication, that he last used methamphetamine "almost two years ago," and that he had two felony convictions. (TR 336). Based on an interview and mental status examination, Dr. Morris reported that Plaintiff's "ability to do work-related mental activities, such as his ability to understand, remember, sustain concentration, persist, socially interact, and adapt, appear[ed] to be adequate for many types of employment." (TR 338).

In a consultative physical examination conducted by Dr. Cooper on April 3, 2010, Plaintiff reported that he injured his lower back in 2002, that he did not receive medical

treatment for the injury, but he continued to have pain and stiffness in his lower back. (TR 345). He reported persistent seizures despite anti-seizure medication and a history of bipolar disorder. A physical examination was noted to be normal except for some tenderness in Plaintiff's lumbar spine. (TR 346-351). Plaintiff's gait was safe and stable without the use of an assistive device. (TR 347).

Plaintiff was prescribed anti-seizure medication at his treating clinic in August 2010. (TR 725). He reported that his depression had improved with the prescribed anti-depressant medication. (TR 725). Plaintiff reported the following month that his seizures had decreased and he was feeling better. (TR 722). Plaintiff reported in January 2011 to his treating clinic that he had been off his medications for two months. (TR 719). Anti-depressant and anti-seizure medications were prescribed, and Plaintiff reported in March 2011 that he was doing better. (TR 716).

Plaintiff was treated for an intentional overdose of over-the-counter acetomeniphen in June 2011. (TR 479). Plaintiff reported he overdosed because his girlfriend left him and he was depressed. (TR 479). A physical examination was reported as normal. (TR 481-482). Plaintiff was discharged two days later to his home. (TR 477).

Plaintiff was treated at a hospital emergency room in September 2011 for seizure activity. (TR 734). The attending physician noted Plaintiff was noncompliant with his anti-seizure medication. (TR 734-735). Plaintiff was given medication and discharged to a law enforcement official. (TR 739).

Plaintiff appeared with counsel and testified at an administrative hearing conducted

on November 7, 2011, before Administrative Law Judge Wampler ("ALJ").  (TR 761-786).

In the decision dated December 30, 2011 (TR 12-26), the ALJ found that Plaintiff had severe impairments due to low back pain, seizure disorder, bipolar disorder, major depressive disorder, Bright's nephritis, polysubstance abuse, in remission, and alcohol abuse, in remission.  Following the agency's well-established sequential evaluation procedure, see 20 C.F.R. § 416.920, the ALJ found that Plaintiff's impairments, considered singly or in combination, did not meet or equal the severity of a listed impairment.

At the next step, step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform work at the light exertional level, see 20 C.F.R. §416.967(b)(defining "light" work), limited to work that allows Plaintiff to avoid concentrated exposure to hazards such as machinery, heights, or driving, perform simple tasks with routine supervision, relate to supervisors and peers on a superficial basis, and does not require him to relate to the general public. (TR 20).  The ALJ found that Plaintiff had no past relevant work.

Reaching the fifth and final step of the required evaluation, the ALJ relied on the agency's Medical-Vocational Guidelines ("grids") and found that Plaintiff could perform other work available in the economy.  Based on these findings, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act.  The Appeals Council declined to review this decision.  Therefore, the ALJ's decision is the final decision of the Commissioner.  See 20 C.F.R. § 416.1481; Wall v. Astrue, 561 F.3d 1048, 1051 (10th Cir. 2009).

## II. Standard of Review

In this case, judicial review of the final Commissioner's decision is limited to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010); Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." Wall, 561 F.3d at 1052 (citations, internal quotation marks, and brackets omitted).

## III. Evaluation of Medical Opinion of State Agency Medical Consultant

Plaintiff contends that the ALJ erred by failing to properly evaluate the medical source opinion of the agency's medical consultant, Dr. Lindsey, in determining Plaintiff's RFC for work. The Commissioner responds that the ALJ properly evaluated Dr. Lindsey's medical opinion.

In a mental RFC assessment form ("MRFCA") completed by Dr. Lindsey, Ph.D., and dated April 19, 2011, Dr. Lindsey opined that Plaintiff's mental impairments had resulted in functional work-related limitations and that he would be markedly limited in his ability to understand, remember, and carry out detailed instructions, moderately limited in his ability

to maintain attention and concentration for extended periods, moderately limited in his ability to accept instructions and respond appropriately to supervisors, moderately limited in his ability to get along with coworkers or peers, and markedly limited in his ability to interact appropriately with the general public. (TR 457-458). The ALJ stated in the decision that he had given "great weight" to the opinion of the state agency medical consultant. (TR 24).

Plaintiff contends that the ALJ erred by not incorporating each of these limitations in the RFC assessment. However, Plaintiff's argument ignores the narrative contained in Dr. Lindsey's MRFCA in which the psychologist stated that as a result of the work-related functional limitations expressed in the MRFCA Plaintiff could perform simple tasks with routine supervision, relate to supervisors and peers on a superficial basis, and could not relate to the general public. (TR 459). The ALJ incorporated into the RFC assessment the opinion expressed in Dr. Lindsey's narrative, which explained the limitations expressed in the previous portion of the MRFCA.

Contrary to Plaintiff's argument, the ALJ properly considered Plaintiff's mental impairments in light of Dr. Lindsey's MRFCA, properly evaluated Dr. Lindsey's MRFCA, and adopted Dr. Lindsey's opinion expressed in the MRFCA concerning Plaintiff's ability to perform mental work-related activities.

IV. Analysis of Credibility

Plaintiff contends that the ALJ erred in evaluating his credibility. The assessment of a claimant's RFC at step four generally requires the ALJ to "make a finding about the credibility of the [claimant's] statements about his symptom(s) and [their] functional effects."

Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at *1 (1996). "Credibility determinations are peculiarly within the province of the finder of fact, and [courts] will not upset such determinations when supported by substantial evidence." Diaz v. Secretary of Health & Human Servs., 898 F.2d 774, 777 (10th Cir. 1990). But an ALJ must "consider the entire case record and give specific reasons for the weight given to the individual's statements" in determining a claimant's credibility. SSR 96-7p, 1996 WL 374186, at *4 (1996). Credibility findings must "be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002)(quotations and alteration omitted).

In addition to objective evidence, the ALJ should consider certain factors in evaluating a claimant's credibility, such as the claimant's daily activities; the location, duration, and intensity of the claimant's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; any treatment other than medications the individual receives or has received for pain or other symptoms; any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and other factors concerning the individual's functional abilities. SSR 96-7p, 1996 WL 374186, at * 3. See Hargis v. Sullivan, 945 F.2d 1482, 1489 (10th Cir. 1991)(listing factors); 20 C.F.R. § 416.929(c)(3)(listing seven factors relevant to credibility analysis).

An ALJ is not, however, required to conduct a "formalistic factor-by-factor recitation of the evidence." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). Employing

"common sense" as a guide, the ALJ's decision is sufficient if it "sets forth the specific evidence he [or she] relies on in evaluating the claimant's credibility." Id.; Keyes-Zachary v. Astrue, 695 F.3d 1156, 1167 (10th Cir. 2012).

In asserting that the ALJ's credibility findings were faulty, Plaintiff first argues that a different ALJ, ALJ Stults, signed the decision "for" ALJ Wampler, see TR 26, and that this substituted signature requires reversal because it violated the agency's internal procedures set forth in the Hearing, Appeals and Litigation Law Manual (known as the "HALLEX"), I-2-8-40. According to Plaintiff, this provision, which is not provided by Plaintiff, allows the Hearing Office Chief ALJ to "sign for" an absent ALJ if the assigned ALJ (1) "approved a final decision draft but is unavailable to sign the final decision" and (2) there is "prior affirmative written authorization to sign the decision/order for the ALJ." Plaintiff contends that there is no evidence in the administrative record that these internal procedures were satisfied before ALJ Stults signed the decision for ALJ Wampler.

Plaintiff does not, however, provide any evidence that the internal procedural requirements he cites, even if they were required by the agency, were NOT satisfied in this case or even that the agency required the "prior affirmative written authorization" to be included in the administrative record. Moreover, the decision itself indicates that ALJ Wampler authored the decision and was merely unable to sign the decision.

Further, even assuming that the HALLEX provision cited by Plaintiff was violated, Plaintiff has shown no prejudice as a result of this minor procedural error. See Butterick v. Astrue, 430 Fed. Appx. 665, 667-668 (10th Cir. 2011)(unpublished op.)(noting that even

8

assuming the court could grant relief for "prejudicial violations of the HALLEX provisions" the plaintiff had shown no prejudice). Plaintiff's scant attempt at showing prejudice is an assertion that ALJ Stults did not have the opportunity to observe Plaintiff's demeanor at the administrative hearing. A claimant's demeanor at the hearing is, of course, a factor that may be considered in the credibility determination. See Williams v. Bowen, 844 F.2d 748, 755 (10th Cir. 1988)(quotation and citation omitted). However, nothing in the record indicates that the ALJ focused any aspect of the credibility determination or the decision itself in Plaintiff's case on an observation of Plaintiff's demeanor. Thus, Plaintiff has shown no prejudice as a result of the alleged procedural violation.

Plaintiff next contends that the ALJ's analysis of his allegation of disabling pain was faulty because he made no specific findings concerning the issue of credibility. "A claimant's subjective allegation of pain is not sufficient in itself to establish disability." Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993). To find that a claimant's pain is disabling, the "pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment." Brown v. Bowen, 801 F.2d 361, 362-363 (10th Cir. 1986)(internal quotation omitted). "Subjective complaints of pain must be evaluated in light of plaintiff's credibility and the medical evidence." Ellison v. Secretary of Health & Human Servs., 929 F.2d 534, 537 (10th Cir. 1990).

The ALJ's decision includes an adequate statement of the reasons, supported by specific references to the record, for the ALJ's credibility determination. (TR 21-24). The ALJ found that Plaintiff's credibility was diminished because his assertion of disabling pain

and other limitations was not consistent with the objective medical evidence in the record and that other factors, including Plaintiff's inconsistent statements concerning his drug and alcohol use and his criminal history, detracted from his credibility.

Further, the ALJ's RFC assessment included the finding that Plaintiff was limited to light work, a finding that indicates the ALJ partially credited Plaintiff's assertion of disabling pain and appropriately determined, in light of the objective medical evidence of record, that Plaintiff's pain somewhat limited his ability to work. No error occurred in the ALJ's determination of Plaintiff's credibility.

## V. Step Five - Reliance on Grids

Plaintiff lastly contends that the ALJ erred in conclusively relying on the grids to support the step five determination. The Social Security Administration has adopted the grids, which are applied in certain cases to determine whether a claimant is disabled or not disabled based on his or her RFC category, age, education, and work experience. See 20 C.F.R. pt. 404, subpt. P, app. 2. In some instances, the grids can be used to satisfy the Commissioner's burden of proof at the fifth step of the sequential evaluation process. "The grids should not be applied conclusively in a particular case, however, unless the claimant [can] perform the full range of work required of that RFC category on a daily basis and unless the claimant possesses the physical capacities to perform most of the jobs in that range." Hargis, 945 F.2d at 1490. When pain "interfere[s] with the [claimant's] ability to work" conclusive reliance on the grids is foreclosed, and in those circumstances the grids may be used only as a framework to determine whether sufficient jobs can be performed by

the claimant. <u>Thompson</u>, 987 F.2d at 1488.

Plaintiff contends that his nonexertional limitations precluded reliance on the grids and required expert vocational testimony to support the step five determination. It is well established law in this circuit that the mere presence of a nonexertional limitation does not preclude reliance on the grids. <u>Gossett v. Bowen</u>, 862 F.2d 802, 806 (10th Cir. 1988). As the ALJ recognized in the decision, "[t]he basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." (TR 25)(citing SSR 85-15). The ALJ also properly recognized in the decision that "[l]ight unskilled work generally requires work with things rather than people." (TR 25)(citing 20 C.F.R. pt. 404, subpt. P. App. 2, Rule 202.00). The ALJ then found that Plaintiff retained the mental ability to perform unskilled work and that his nonexertional limitations had little or no effect on the occupational base of unskilled light work in light of SSR 85-15 and Rule 202.00.

Plaintiff first contends that SSR 85-15 "applies only to cases involving solely nonexertional impairments" and could not be applied in his case because he also has an exertional impairment. Plaintiff's Opening Brief, at 12. This argument is not supported by authority. The ALJ's decision necessarily addressed both the exertional and nonexertional limitations at issue in Plaintiff's case. SSR 85-15 provides guidance as to the adjudication of cases in which the relevant issue is whether "the person can be expected to perform unskilled work." SSR 85-15, 1985 WL 56857, *4. Plaintiff does not contend, nor does the

evidence show, that Plaintiff's mental limitations would preclude the performance of unskilled work.

Dr. Lindsey and Dr. Hartley, Ph.D., both non-examining medical consultants, provided MRFCAs concerning Plaintiff's mental functional abilities. Dr. Hartley opined that Plaintiff could perform simple and some complex tasks, could relate to others on a superficial work basis, and could adapt to a work situation. (TR 355). Dr. Lindsey opined that Plaintiff could perform simple tasks with routine supervision, relate to supervisors and peers on a superficial basis, adapt to a work situation, and could not relate to the general public. (TR 459). Both of these narrative explanations of the psychologists' MRFCA findings complied with the requirement of SSR 96-8p that "nonexertional capacity [which includes mental limitations] must be expressed in terms of work-related functions" or "[w]ork-related mental activities." SSR 96-8p, 1996 WL 374184, at *6. In this circuit, it has been recognized in at least one unpublished decision that "a limitation to unskilled work . . . could be used as shorthand for the specific mental abilities described in SSR 85-15. . . ." Jaramillo v. Colvin, 576 Fed. Appx. 870, 875 (10th Cir. 2014)(unpublished op.). The MRFCAs by these psychologists were consistent, although Dr. Hartley's narrative explanation of Plaintiff's mental work-related functional abilities was more restrictive. The ALJ adopted Dr. Hartley's MRFCA as set forth in his narrative, which accounted for the moderate functional limitations he found in the previous portion of the MRFCA.

Plaintiff next contends that the portion of the ALJ's RFC assessment stating that Plaintiff "must avoid even concentrated exposure to hazards (machinery, heights, driving)"

12

precludes reliance on the grids to support the step five determination. However, as Plaintiff concedes, SSR 85-15 addresses the effects of environmental restrictions on the availability of work. SSR 85-15 provides that "[a] person with a seizure disorder who is restricted only from being on unprotected elevations and near dangerous moving machinery is an example of someone whose environmental restriction does not have a significant effect on work that exists at all exertional levels." SSR 85-15, 1985 WL 56857, at *8. This argument is without merit in light of the clear language of SSR 85-15.

No error occurred with respect to the ALJ's evaluation of the opinions of the medical consultants, and the ALJ did not err by relying on the grids to support the step five determination. Because there is substantial evidence in the record to support the Commissioner's determination, the decision should be affirmed.

## RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's application for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before _____December 1st, 2014, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this _____10th_____ day of _____November_____, 2014.


GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE